Thomas P. Geiss
10889 Alfredo Vasquez
El Paso, TX 79934
490-277-8327
tgeiss77@gmail.com

Pro Per

FILED ___ LODGED
___ RECEIVED ___ COPY
APR 1 6 2012
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

## United States District Court

### District of Arizona

| | | |
|---|---|---|
| Thomas P. Geiss | ) | CV-12-797-PHX-JAT |
| Plaintiff | ) | CIVIL ACTION NO_____ |
| v. | ) | (1) FSLA OVERTIME WAGES (Section 29.U.S.C. 207) |
| Sara Lee Fresh, Inc. A Delaware Corporation, A Maryland Corporation and Does 1-100, Inclusive | ) | JURY TRIAL DEMANDED |
| Defendant | ) | |

### Complaint

Plaintiff Thomas P. Geiss, on behalf of himself, complains and alleges against defendants Sara Lee Fresh, Inc., a Delaware Corporation, and Sara Lee Corporation, a Maryland Corporation ( collectively "Sara Lee"), and Does 1 through 100 as follows:

1

## INTRODUCTION

1. The Fair Labor Standards Act ("FLSA") requires that employers provide overtime compensation to their employees at a rate of one-and-one-half times their regular rate of pay for all hours worked in excess of forty hours a week. An employer may not avoid their legal obligation by simply labeling its workers as "independent contractors," if the employer in fact treats the workers as employees.

Under the FLSA to "employ includes to suffer or permit to work" 29 U.S.C. Section 203. Because of this broad federal statute a court should look beyond the labels that employers apply and instead consider the "economic reality" of the relationship between the worker and the employer. An employment relationship under the FLSA should be found when the employee is economical dependent upon the employer.

2. Defendant Sara Lee is in the business of producing and distributing baked goods. In 1992, Sara Lee acquired Los Angeles based International Baking Corporation ("IBC"), one of the largest bagel makers in the area from Simon and Daniel Mani. Using IBC, Sara Lee built its presence in supermarket bakery aisles. To deliver their baked goods Sara Lee enters into "Distribution Agreements" which label the delivery drivers as "Distributors" and mischaracterizes them as "independent contractors" rather than employees. Plaintiff entered into a distribution agreement with Sara Lee on March 23, 2008. Despite this mischaracterization as an "independent contractor" plaintiff was a delivery driver who was economically dependent upon Sara Lee. Sara Lee dealt directly with retail stores, without any input or participation from their drivers. Sara Lee's contracts with the retail stores specify not only products and the "wholesale price" (i.e., the prices for product delivered to the retail stores), but also the arrangement on the shelves, and the frequency and times of the deliveries. Sara Lee negotiated these terms within

their contracts with the retail stores without any input, participation or approval from the "independent contractors"/drivers. Sara Lee exerts control over their drivers through their management staff know as District Managers ("DM") to assure compliance with Sara Lee's contractual obligations entered into with the retail stores.

Sara Lee even controls the money. Sara Lee loads product prices into the drivers handheld computers, they bill the stores for the difference between the quantity of products delivered and those removed as "overcode" (beyond their sell-by date) or damaged, they collect the money from the retail stores and pay their drivers based upon what was sold at the retail stores. Despite the economic dependence of plaintiff upon Sara Lee and the applicable statutes and case law providing workers such as plaintiff with the protections of the FLSA, Sara Lee continued to misclassify drivers as "independent contractors", thereby depriving plaintiff of his legal rights to proper compensation. Sara Lee has created this "sham" independent contractor arrangement through its "Sara Lee Fresh, Inc. Distributions Agreements " which is a mandatory take-it-or-leave-it contract of adhesion which was drafted unilaterally and is non-negotiable, with unconscionable terms solely for the benefit of Sara Lee.

3. Sara Lee has previously been sued for violations of the FLSA and other state law claims in California and Illinois. Six drivers mischaracterized as independent contractors filed a lawsuit against Sara Lee in the U.S. District Court for the Northern District of Illinois for alleged violations of the FSLA for back pay.(Sam Huynh, Jim Gargano, Bill Argentino, Ken Vincek, Russell Bach and Millan Vladesov. Jr. v. Sara Lee, Inc., U.S. District Court for the Northern District of Illinois, Eastern Division, Case No. 01C 8492) Sara Lee compelled arbitration based on the binding arbitration clause in the Distribution Agreements, with separate

arbitrations held for each plaintiff resulting in settlements paid by Sara Lee to each plaintiff.

In the Superior Court of The State of California, County of Los Angeles, Tom Creed filed a lawsuit on February 9, 1998 and the essence of his numerous allegations of wrongful conduct by Sara Lee was that he and all other Sara Lee "independent distributors" in California were, in fact, "employees." The trial began on July 7, 2000 and lasted several months and a Statement of Decision was issued on September 18, 2001 by Judge Warren L. Ettinger. After a "long and deliberate trial" "including many volumes of documentary evidence and the testimony of numerous witnesses, " Judge Ettinger found "that, in connection with the distribution of fresh baked goods in California on and after February 9, 1994 [Sara Lee] exercised substantial and firm control over all essential elements of the distribution process being handled by its network of so-called 'independent distributors' and treated these distributors as 'employees'...."(Creed v. Sara Lee (Los Angeles County Superior Court, case no. 185718) Statement of Decision, p.2.11. 4-15(hereinafter "Creed").

4. From the time of the Creed case until the end of plaintiffs relationship with Sara Lee in 2010, Sara Lee's "independent distributors were termed "franchisees" by Sara Lee. In substance, Sara Lee's conduct which gave rise to the Court's Decision in Creed has not changed in a legally significant manner; thus, the same conclusion is justified today.

## JURISDICTION AND VENUE

5. Plaintiff brings this action to recover unpaid overtime and other relief under the provisions of the Fair Labor Standards Act of 1938, as amended, 29U.S.C. Section 201 et seq.

6. This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. section 1331.

7. Venue is proper in the United States District Court, District of Arizona under 28

U.S.C. section 1391 (b) and 28 U.S.C. section 1391 (c) because the wrongful conduct alleged herein arose in large part from Sara Lee's acts and conduct which took place in Arizona and Sara Lee has a bakery and warehouse which does business in Arizona.

## THE PARTIES

8. Plaintiff is a resident of El Paso, Texas in El Paso County. Plaintiff worked for Sara Lee in Maricopa County, Arizona predominately from Sara Lee's warehouses and the retail stores they did business with, from approximately March 23, 2008 until January 10, 2010, the time of the alleged wrongful conduct by Sara Lee.

9. Sara Lee Fresh, Inc. is a wholly owned subsidiary of Sara Lee Corporation. Sara Lee stipulated in Creed that "On May 18, 1992, Sara Lee Corporation incorporated a Delaware corporation under the name SLC X; Inc. On or about November 14, 1992, International Baking Company, Inc. (a California corporation) merged into Sara Lee Corporation (a Maryland corporation), with Sara Lee Corporation as the surviving corporate entity. Effective November 16, 1992, SLC X, Inc. was re-named International Baking Company, Inc. Thereafter, the business of International Baking Company, Inc. was conducted as a wholly-owned subsidiary of Sara Lee Corporation. Effective May 9, 2000, International Baking Company, Inc. was re-named Sara Lee Fresh, Inc."

10. At all times herein mentioned there existed, a unity of interest and ownership between Sara Lee Corporation and Sara Lee Fresh, Inc. such that any individuality and separateness between them have ceased, and Sara Lee Fresh, Inc. is the alter ego of Sara Lee Corporation in that Sara Lee Corporation controls and dominates the corporate business of Sara Lee Fresh, Inc. Examples of Sara Lee Corporation's identity with Sara Lee Fresh, Inc. include, but are not limited to the following:

(a) the presence in both corporations of common officers and directors;

(b) common shareholders;

(c) financial support of the subsidiary's operations by the parent;

(d) financial obligations of the subsidiary are assumed to be those of the parent;

(e) the property of the subsidiary is used by the parent corporation as it's own, and visa versa; and

(f) the individuals who exercise operating control over the subsidiary exercise it in the interest of the parent.

11. Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-100, inclusive, and therefore sue Defendants by such fictitious names. Each of the Doe Defendants was in some manner legally responsible for the damages suffered by Plaintiff as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, together with appropriate charging allegations, as may be necessary.

12. At all times mentioned herein, the Defendants named as Does 1-100, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured Plaintiff in the State of Arizona.

13. At all times mentioned herein, each Defendant was the agent, servant, or employee of the other Defendants and in acting and omitting to act as allege herein did so within the course and scope of that agency or employment.

## **STATEMENT OF FACTS**

14.  Sara Lee is in the business of producing and distributing baked goods. Virtually all of the retail sales of said baked goods to consumers take place through third party retail stores(e.g., supermarkets, food stores, warehouse stores or convenience stores [hereinafter, "retail stores"])

15.  Defendant manufactures and distributes baked goods under brand names including "Sara Lee."

16.  Sara Lee entered into agreements, and/or Customer Marketing Agreements (collectively "CMAs") with retail stores, whereby Sara Lee committed to deliver, and the retail stores agreed to provide shelf space, set pricing, manner of product display, for products distributed by Sara Lee. Items of Agreement therein, included some or all of the following: (1) schematics mandating products, and arrangement of products, in specified locations on store shelves, (2) mandatory pricing for products, (3) mandatory promotions for products, (4) mandatory displays for products, (5) mandatory delivery schedules for products, (6) mandatory freshness requirements for products, and (7) mandatory service intervals for products.

17.  With so-called "direct store delivery" retailers allocate a certain space and location within their retail establishments for display of Sara Lee products. The goods are delivered to the store during its receiving hours (generally morning hours), and the stocking, restocking, and arrangement of Sara Lee products is performed by Sara Lee's drivers rather than by the retail store's employees.

18.  Plaintiff was a driver, also known as a "distributor" and/or a "delivery person"

on behalf of Sara Lee.

19. The Sara Lee driver's function was to primarily arrange merchandise, rotate stocks, place point-of-sale and other advertising materials, order products, and engage in other activities mandated by Sara Lee. Drivers must keep shelves neat and full; they must remove damaged goods and "over-code" goods (goods that are beyond their "sell-by" date). Sara Lee required its drivers to stock specific products pursuant to the "schematic" mandated by Sara Lee. Pursuant to the CMA's, drivers were not allowed to do what was called "rolling" (if a certain product was sold out or temporarily out of stock from the bakery, another Sara Lee product from the space to either side would be used to cover the empty space). There is no requirement for past experience or formal training as a delivery driver. The functions carried out by the drivers do not require any special expertise or skill.

20. Sara Lee issues a Policy Manual to each driver. Sara Lee may add to, delete or otherwise modify the policies, procedures and instructions in the Policy Manual at any time. All revisions will be reflected in written or electronic updates to the Policy Manual and shall become effective immediately upon receipt. Sara Lee mandates that drivers must comply with the Policy Manual as promulgated and amended from time to time. The Policy Manual dictated among other things, the delivery times and delivery days the drivers must deliver to the retail stores based upon Sara Lee's CMA's.

21. The distribution agreement with Sara Lee called for Sara Lee to buy back a certain percentage of bread from each store that did not sell within a seven day window. The percentages varied by store. The distribution agreement and Policy Manual stated that stale percentages were to be negotiated between the distributor/driver and Sara Lee. On a

regular basis, district managers would adjust driver's stale percentages downward without negotiating with the driver. This was done by making the change in the drivers handheld computers or by going into a computer program at the Sara Lee warehouse office and adjusting it there. In March of 2008, Plaintiff's buy back percentage averaged twenty-three percent for the entire route. By January of 2010, his buy back percentage had dropped to thirteen percent for the entire route. It was in Sara Lee's benefit to have a small stale percentage so that they did not have to buy back as much bread thereby passing the loss onto the delivery/driver. In fact, the plaintiff suffered economic loss because of this policy.

22.  It is customary in the baked goods distribution business that employees, not independent contractors, deliver baked goods.

23.  Sara Lee's products similar to those delivered by Plaintiff are in many cases distributed in the same manner and means by drivers that Sara Lee admits are its employees.

24.  Sara Lee tells its drivers that they are independent contractors, and each driver is required to sign a distribution agreement in which, among other things, the driver must acknowledge that he or she is an independent contractor. Sara Lee characterizes its drivers to the outside world, and to the driver themselves, as independent contractors in order to shift its business expenses to its drivers and to the general public. That characterization is contrary to the true facts and the law.

25.  In July 2001, Sara Lee Corporation's then-president and chief executive officer, C. Steven McMillan, claimed to have "analyzed in some depth the relative cost differential" between Sara Lee's independent contractor system and an employee based system. In

order to lower its costs by avoiding legally imposed employer mandates, such FICA and workers compensation and disability, Sara Lee categorized its drivers as independent contractors, when in fact, they were employees.

26. Sara Lee employs district managers (DMs) and supervisors whose jobs are to oversee and supervise the drivers.

27. Sara Lee's DMs and supervisors (among others in Sara Lee's management) control all significant aspects of performance by periodically issuing schematics showing how the shelves are to be stocked (in industry terminology, "how the tables are to be set") and by issuing memoranda related to "adequate service" in order to assure that it complies with the terms of the CMAs and other agreements between Sara Lee and its customers, i.e., the retail stores.

28. Sara Lee further controls all significant aspects of performance through threats from DMs and/or supervisors, based on purported complaints about "adequate service," from the retail stores. The plaintiff was treated as an employee of Sara Lee by all of the retail stores on his route. If a retail store had problems with his service, they would call Sara Lee and complain to his DM Jason Geisey. In fact, Sara Lee set up a "hot line" for Fry's retail grocery stores. The purpose of the hotline was for Fry's to have a number they could call if they had any problems with their Sara Lee bread delivery on a daily basis. The DM would call the driver after receiving a call from the hot line and tell the driver what to do regarding the problem. If plaintiff was in fact, an independent contractor retail stores would be calling him about problems within their stores and not a "hot line" at Sara Lee.

29. In October of 2009, a printer malfunction caused a delay in plaintiff bringing in bread for approximately forty-five minutes at one of his Fry's retail grocery stores. The

assistant manager called his DM and told him that plaintiff would not be allowed into the store to service it. Without plaintiff's permission his DM assigned the Fry's store to another driver and took the ordering and inventory functions out of his handheld computer and placed those functions into the other driver's handheld computer. Both Sara Lee and Fry's retail grocery store treated Plaintiff like an employee by attempting to remove the store from his route which would have created a huge economic loss as this was the largest retail store he serviced on his route.

30. Sara Lee determines the prices charged to the drivers and retains absolute discretion to establish and adjust its wholesale prices.

31. Sara Lee determines the quantity of product that a driver must take from the company by requiring the "distributor" to monitor each retail stores sale of products in order to keep each stores shelves and racks stocked with an adequate and fresh supply of products sufficient to meet reasonably anticipated demand by the stores customers and avoid out-of-stock conditions.

32. Sara Lee may, at any time and from time to time in its sole discretion and without notice to drivers discontinue the manufacture of all, or select products and withdraw from offering, selling or distributing all, or select, products in the Sales Area.

33. Title to and risk of loss of the products sold to the "distributor /driver pass to "distributor"/driver upon delivery to the driver. However, the risk of loss remains on the driver, even after delivery of products to the stores, until the products are scanned at the register. The plaintiff's rights under the UCC were contracted away by Sara Lee via their contracts with the retail stores without any input or approval from him.

34. Sara Lee unilaterally dictates policies regarding payment and accounting.

35. The opportunity for plaintiff to build and invest in a truly independent business is limited by the fact that Sara Lee can take away products whenever they like and can add products not profitable to the drivers which they must sell and take a loss.

36. The Distribution Agreement states that a "distributor" is not required to service any Outlet in the Sales Area that has proven consistently to be unprofitable; provided however, that the "distributor" agrees that if a Chain requires that one or more of its Outlets in the Sales Area be served as a condition to Sara Lee serving the Chain's other outlets located elsewhere (either within or outside of the Sales Area) then the profitability of serving the particular Outlet or Outlets in the Sales Area that are part of that Chain shall be judged on the basis of the profitability to Sara Lee of serving the chain as a whole. Sara Lee contracted with new retail stores such as Walgreens and Food City and added five new stores to plaintiff's route. These new stores added significant delivery time to plaintiff's route to service them and were not profitable at all for plaintiff.

37. Distributors cannot sell their route without consent at the complete discretion of Sara Lee.

38. Through CMAs, schematics, category management, and/or other promotional allowances, Sara Lee controls, among other things; the assortment of products, product pricing, types of displays, arrangement of product on the shelves, amount of product on the shelves, how much is "back-stocked" behind the product directly showing on the shelves, frequency of delivery, frequency of merchandising (e.g., neatening up the displayed product), frequency, number and type of promotions. Sara Lee negotiates the foregoing terms in the CMAs without the input or approval of the plaintiff.

40. The work of the drivers is an integral part of Sara Lee's business. If Sara Lee

were to suddenly have no drivers, Sara Lee Fresh would lose its principal means of delivery and would be unable to fulfill its contractual obligations to the retail stores (its true customers).

41. The driver's investment in the business is minimal in comparison to Sara Lee's investment. Drivers are required to purchase or lease a delivery vehicle, purchase insurance and gas for the vehicle, lease a hand held computer from Sara Lee and buy gloves and office supplies such as pens, pencils, and staplers. In contrast, Sara Lee buys or leases warehouses and bakery facilities in numerous states, maintains the warehouses and bakery facilities, staffs the warehouses and bakeries with employees, has corporate employees, advertising, property and liability insurance, and spends millions of dollars to purchase and/or merge with other bread companies to expand their presence in retail stores across the country.

42. Drivers work for Sara Lee on a permanent basis and often continue to provide service for many years. Plaintiff worked for Sara Lee for almost two years.

43. Sara Lee Corporation carefully investigated the former International Baking Company, Inc owned by Simon and Daniel Mani., before buying it and merging it into Sara Lee Corporation and the employment status of the drivers was the only issue holding up the entire merger. Tax Attorneys from Sara Lee Corporation were so concerned that these drivers were employees, Sara Lee Corporation required the hold-back of $1,500,000 related to the merger as protection against contingent liability in the event federal authorities recognized the drivers as employees. Sara Lee knew from the onset that the "independent contractor" status of the drivers was a problem. After the merger, Sara Lee hired Mr. Simon Mani who worked in the Chicago offices of Sara Lee Corporation and

remained on their payroll for eight years. Despite its recognition that the company Mr. Mani had been operating may have misclassified its employees as "independent contractors," Sara Lee Corporation put Mr. Mani in charge and provided no instruction or protection against violations of labor laws. (Creed Case, Statement of Decision). In fact, the practice of misclassifying employees as "independent contractors" continued at Sara Lee Corporation with Mr. Mani in charge of five hundred "independent contractors"

## **CLAIM FOR RELIEF**

(Failure to pay overtime compensation, 29 U.S.C. section 207)

44. Plaintiff hereby incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

45. At all relevant times, defendant was an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. Section 203, in that it had employees in commerce or in the production of goods for commerce, or handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce and is an enterprise with gross operating revenues in excess of $500,000.

46. At all relevant times, plaintiff has been entitled to the rights, protections and benefits of the Fair Labor Standard Act.

47. Plaintiff is entitled to overtime compensation at a rate of not less than one and one-half times his regular rate of pay for all hours worked in excess of 40 hours per work week under the overtime provisions of the Fair Labor Standards Act.

48. Plaintiff worked in excess of the statutory maximum number of hours provided for

in 29 U.S.C. Section 207 without receiving compensation for such excess hours at a rate of not less than one and one-half times his regular rate of pay. More particularly, plaintiff worked for Sara Lee 364 days a year with only Christmas Day off. Every week plaintiff worked seven days a week with the exception of Christmas Day. Plaintiff had one of the largest routes in Maricopa County, Arizona. Plaintiff worked five delivery days a week a week (Monday, Tuesday, Thursday, Friday and Saturday) from 3:30 a.m. until 6:00 p.m. Plaintiff worked 2 days a week (Wednesday and Sunday) rotating stock and merchandising shelves from 5:00 a.m. until 11:00 a.m. in the mornings and from 2: 00 p.m. until 5:00 p.m. in the evening.

49.     Defendant's had a practice of failing to pay overtime compensation to plaintiff and all other delivery drivers. The failure of defendant to compensate the plaintiff at one and one-half time his regular rate for all such hours worked is a violation of 29 U.S.C. Section 207.

50.     Defendant's have failed to make, keep, and preserve records with respect to plaintiff sufficient to determine his wages, hours, and other conditions and practice of employment in violation of the FLSA, 29 U.S.C. Section 201, et seq., including U.S.C. section 211(c).

51.     Defendant's conduct in failing to pay plaintiff's overtime and their failure to make, keep and preserve records relating to his wages and his hours worked as required by the FLSA was "willful" violation under 29 U.S.C. Section 255.

52.     Defendant is liable to plaintiff in the amount of his unpaid overtime compensation and an additional equal amount as liquidated damages, and for reasonable attorneys' fees if any, together with the costs and disbursements of this action.

## PRAYER FOR RELIEF

53.   WHEREFORE, plaintiff requests the following relief:

54.   Overtime compensation at the rate of not less than one and one-half times his regular rate of pay for all hours worked in excess of 40 hours per week, together with liquidated damages in an equal amount, appropriate interest, attorney's fees, and the costs and disbursements of this action.

55.   Such other and further relief as the Court deems proper.

April 17th, 2012

Respectfully submitted,

*Thomas P. Geiss*

Thomas P. Geiss
10889 Alfredo Vasquez Drive
El Paso, Texas 79934
tgeiss77@gmail.con